Sheehan & Associates, P.C.
Spencer Sheehan
60 Cutter Mill Rd Ste 409
Great Neck, NY 11021-3104
Tel: (516) 268-7080
spencer@spencersheehan.com

United States District Court
Southern District of New York

7:21-cv-00408

| | |
|---|---|
| Lauren Werner, individually and on behalf of all others similarly situated,　　　　　　Plaintiff,　　　　　- against -　Nestlé Healthcare Nutrition, Inc.,　　　　　　Defendant | Class Action Complaint |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Nestlé Healthcare Nutrition, Inc. ("defendant") manufactures, distributes, markets, labels and sells high protein nutrition drinks under the Carnation Breakfast Essentials brand identified with the flavor "Classic French Vanilla."

2. The relevant front label representations include "Classic French Vanilla," "Natural Flavor With Other Natural Flavors" and "No Artificial Flavors, Colors, [or] Sweeteners."[1]

---

[1] "French Vanilla" is believed to refer to vanilla beans cultivated in the former French colonial countries, including Madagascar. The other significant vanilla-producing countries are located in Australasia – Indonesia, Papua New Guinea, etc.



3.    Defendant misleads consumers because despite the representation that the flavoring is only from "natural flavor with other natural flavor" and that it does not contain artificial flavors, the Product contains artificial flavor.

4.    Surveys have consistently found that at least seven out of ten consumers avoid artificial flavors.[2]

---

[2] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.

2

5. Reasons for eschewing artificial flavors include a desire to avoid synthetic ingredients with detrimental health effects.[3]

6. "All demographics [of consumers] from Generation Z to Baby Boomers – say they would pay more" for foods with no artificial flavors."[4]

7. Products made with natural instead of artificial flavors are "more popular than ever and approaching performance parity with their synthetic counterparts."[5]

8. Flavors are often the most valued part of a food, and foods with natural flavors are considered higher quality by consumers.

9. The FDA established regulations so that consumers are told whether the flavor of what they are eating or drinking contains (1) from the characterizing ingredient, (2) natural flavor from the characterizing ingredient, i.e., strawberry flavor from strawberries, (3) natural flavor from natural source other than the characterizing ingredient, i.e., strawberry flavor derived cherries and/or (4) artificial flavor.

10. Natural flavors are flavors from natural sources made through natural processes. 21 C.F.R. § 101.22(a)(3).

11. Artificial flavors are defined by the FDA as any flavoring from a synthetic source or made through an artificial process. 21 C.F.R. § 101.22(a)(1).

12. Where a food gets its flavor from a characterizing ingredient – i.e., strawberries in strawberry shortcake, the food can be named "strawberry shortcake" because all its strawberry flavor comes from strawberries. 21 C.F.R. § 101.22(i)(1).

13. If a food characterized as strawberry contains some strawberries, but not enough to

---

[3] Donna Berry, Playing the natural flavor game, Food Business News, Jan 1, 2018.
[4] Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.
[5] Kimberly Decker, Advances in natural flavors, Food & Beverage Insider Oct 12, 2020.

3

characterize the food and contains natural flavor derived from strawberries, it can be labeled as "natural strawberry flavored." 21 C.F.R. § 101.22(i)(1)(i).

14. Where some flavor is from the characterizing ingredient with other flavors from natural sources other than the characterizing flavor which enhance, resemble or simulate the characterizing flavor, the front label is required to state, "With Other Natural Flavor." 21 C.F.R. § 101.22(i)(1)(iii).

15. Where a food contains any artificial flavor that simulates the characterizing flavor, the front label is required to disclose this fact through the statement, "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

16. Though the Product is labeled as "Natural Flavor With Other Natural Flavor" and "No Artificial Flavors," these statements are false, misleading and deceptive.

17. Though the ingredient list only identifies "Natural Flavor," consumers are not told this contains the artificial flavor, vanillin.

**INGREDIENTS:** WATER, GLUCOSE SYRUP, MILK PROTEIN CONCENTRATE, SUGAR, AND LESS THAN 2% OF VEGETABLE OIL (CANOLA, HIGH OLEIC SUNFLOWER, CORN), VITAMINS AND MINERALS‡, SOY PROTEIN ISOLATE, CELLULOSE GEL AND GUM, SALT, NATURAL FLAVOR, SOY LECITHIN, CARRAGEENAN, STEVIA LEAF EXTRACT

Ingredients: WATER, GLUCOSE SYRUP, MILK PROTEIN CONCENTRATE, SUGAR, AND LESS THAN 2% OF VEGETABLE OIL (CANOLA, HIGH OLEIC SUNFLOWER, CORN), VITAMINS AND MINERALS‡, SOY PROTEIN ISOLATE, CELLULOSE GEL AND GUM, SALT, NATURAL FLAVOR, SOY LECITHIN, CARRAGEENAN, STEVIA LEAF EXTRACT.

4

18. Laboratory testing confirmed that the Product contains the synthetic, artificial flavor of vanillin.

19. Vanillin is available from three main sources: natural vanilla extract from vanilla beans, vanillin produced from chemicals petrochemical sources and vanillin produced from lignin derived from the wood pulping process.

20. The vanillin is not from vanilla extract, since the analysis failed to identify the vanilla marker compounds.

21. Though the Product claims it is "Classic French Vanilla" flavor, it does not even list vanilla extract in its ingredient list.

22. However, it lists "Stevia Leaf Extract."

23. Instead, the vanillin is synthesized from the synthetic petrochemical derivative, guaiacol, which is the method that produces 85% of vanillin.

24. There are two methods for converting guaiacol into vanillin – nitrosation and the glyoxylic acid.

25. Currently, the glyoxylic acid process is used.

26. It begins with the condensation of guaiacol with glyoxylic acid, followed by an oxidation step and the simultaneous acidification and decarboxylation step, yielding vanillin.

27. The popularity of vanilla in the 19th century led to the isolation of the most predominant flavor component, vanillin.

28. The availability of low-cost vanillin resulted in foods purporting to contain vanilla, which either contained no vanilla or a trace or de minimis amount, boosted by synthetic vanillin.

29. Consumers are unable to know that the "Natural Flavor" contains flavors simulating vanilla derived from artificial sources and made through artificial processes, and do not contain

any detectable amount of vanilla.

30. The Product fails to disclose it contains artificial flavor because guaiacol is a synthetic, coal tar derived ingredient, which undergoes complex reactions and transformations until it results in vanillin.

31. The representations are misleading because the artificial flavor is incapable of providing a vanilla taste to the Product.

32. Vanilla's unique flavor is due to the many odor-active compounds in vanilla beans, including acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls.

33. Vanillin contributes between one-quarter (25%) and one-third (33%) to the overall flavor and aroma impact of vanilla.

34. Methyl cinnamate and cinnamyl alcohol provide distinct cinnamon and creamy notes to vanilla.

35. P-cresol contributes flavor notes described as woody and spicy.

36. P-hydroxybenzoic acid and vanillic acid are significant phenolic compounds which contribute to vanilla's aroma.

37. 4-methoxybenzaldehyde (p-anisaldehyde) provides creamy flavor notes to vanilla.

38. 4-methoxybenzyl alcohol (p-anisyl alcohol) provides floral notes.

39. This means that vanillin by itself cannot produce the familiar flavor and aroma consumers know as vanilla.

40. For instance, sensory evaluation of vanillin is mainly sweet, with a lackluster "chemical-like" taste and odor because it lacks the other molecules in vanilla.

41. The laboratory analysis also reveals other undisclosed artificial flavors – maltol and

piperonal. 21 C.F.R. § 172.515(b), § 182.60 ("Synthetic flavoring substances and adjuvants.").

42. The Product's labeling misleads consumers because it contains artificial flavor which simulates the characterizing flavor of [French] vanilla yet omits the required statement of "artificially flavored" from the front label. 21 C.F.R. § 101.22(i)(2) (requiring front label statement of "artificially flavored" where a food contains any artificial flavor which simulates the characterizing flavor).

43. It is false and misleading to describe the Product's taste as "French vanilla,"[6] because the artificial flavor used cannot provide the odor-active compounds that are critical to the expected vanilla taste.

44. The presence of added vanillin, maltol and piperonal renders the front label representations false, deceptive and misleading because it omits the required statement of "artificially flavored," "Naturally and Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

45. Because Defendant's ingredient list designates "Natural Flavor," it is inconceivable for consumers without chromatography equipment at the checkout line to ascertain the Product contains artificial flavors.

46. The correct designation of this ingredient should be "Natural and Artificial Flavor" or "Natural Flavor, Vanillin, an Artificial Flavor, Artificial Flavor," with the correct labeling based on the exact composition of the flavor components used.

47. The Product contains other representations which are misleading, including "No Artificial Sweeteners" on the front label when the Product contains stevia leaf extract, a non-natural, artificial sweetener.

---

[6] "French Vanilla" refers to vanilla from vanilla beans originating in the former French colonial countries, including Madagascar. The other significant vanilla-producing countries are located in Australasia – Indonesia, Papua New Guinea, etc.

48. Defendant's marketing is designed to – and does – deceive, mislead, and defraud Plaintiff and consumers.

49. Defendant misrepresented the Product through affirmative statements and omissions.

50. Defendant sold more of the Product and at higher prices than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

51. The value of the Product that plaintiff purchased, used and/or consumed was materially less than its value as represented by defendant.

52. Had plaintiff and the proposed class members known the truth, they would not have bought the Product or would have paid less for it.

53. As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $2.99 per 8 OZ when purchased individually, excluding tax, compared to other similar products represented in a non-misleading way and higher than the price of the Product if it was to be represented in a non-misleading way.

### Jurisdiction and Venue

54. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

55. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

56. Plaintiff Lauren Werner is a citizen of New York.

57. Defendant Nestlé Healthcare Nutrition, Inc. is a Delaware corporation with a principal place of business in Bridgewater, Somerset County, New Jersey.

58. Diversity exists because plaintiff Lauren Werner and defendant are citizens of

different states.

59. Upon information and belief, sales of the Product and statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

60. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – plaintiff's purchase of the Product.

61. Venue is further supported because many class members reside in this District.

## Parties

62. Plaintiff Lauren Werner is a citizen of Goshen, Orange County, New York.

63. Defendant Nestlé Healthcare Nutrition, Inc. is a Delaware corporation with a principal place of business in Bridgewater, New Jersey, Somerset County.

64. Defendant is one of the nation's largest manufacturers of protein supplement beverages.

65. Carnation is one of the most well-known brands in the nutritional beverage marketplace.

66. The High Protein Products are sold to consumers from retail and online stores of third-parties.

67. The Product is packaged in eight ounce bottles and sold individually and in boxes of six

68. During the relevant statutes of limitations for each cause of action alleged, plaintiff purchased the Product within her district and/or State in reliance on its representations and omissions.

69. Plaintiff bought the Product on one or more occasions within the statute of limitations from one or more locations, including between July and September 2020 from ShopRite, 78

Brookside Ave Suite 122, Chester, NY 10918.

70. Plaintiff bought the Product at or exceeding the above-referenced price for because she wanted to buy a product with the qualities and attributes represented herein – containing only natural flavors and no artificial flavors, which tasted like vanilla and contained vanilla, like the Product represented.

71. Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

72. The Products was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

73. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labeling is consistent with its composition and origins.

## Class Allegations

74. The class will consist of all purchasers of the Product who reside in New York, Maine, Rhode Island and Connecticut during the applicable statutes of limitations.

75. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

76. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

77. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

78. Plaintiff is an adequate representative because her interests do not conflict with other members.

79. No individual inquiry is necessary since the focus is only on defendant's practices

and the class is definable and ascertainable.

80. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

81. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

82. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
(Consumer Protection Statutes)

83. Plaintiff incorporates by reference all preceding paragraphs.

84. Plaintiff and class members desired to purchase a product which contained only natural flavors, flavor from vanilla, and no artificial flavors.

85. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

86. Defendant misrepresented the Product through its statements, comparisons, omissions, ambiguities and actions.

87. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

88. Plaintiff incorporates by reference all preceding paragraphs.

89. Defendant had a duty to truthfully represent the Product, which it breached.

90. This duty is based on defendant's position, holding itself out as having special knowledge and experience in the sale of the product type.

91. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

92. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

93. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

94. Plaintiff incorporates by reference all preceding paragraphs.

95. Defendant misrepresented and/or omitted the attributes and qualities of the Product, containing only natural flavors, flavor from vanilla, and no artificial flavors.

96. Defendant's fraudulent intent is evinced by its failure to accurately disclose the issues described herein, when it knew not doing so would mislead consumers.

97. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Unjust Enrichment

98. Plaintiff incorporates by reference all preceding paragraphs.

99. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   January 17, 2021

        Respectfully submitted,

        Sheehan & Associates, P.C.
        /s/Spencer Sheehan
        Spencer Sheehan
        60 Cutter Mill Rd Ste 409
        Great Neck NY 11021-3104
        Tel: (516) 268-7080
        Fax: (516) 234-7800
        spencer@spencersheehan.com
        E.D.N.Y. # SS-8533
        S.D.N.Y. # SS-2056

7:21-cv-00408
United States District Court
Southern District of New York

Lauren Werner, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Nestlé Healthcare Nutrition, Inc.,

Defendant

Class Action Complaint

```
Sheehan & Associates, P.C.
60 Cutter Mill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 268-7080
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: January 17, 2021

                                                  /s/ Spencer Sheehan
                                                 Spencer Sheehan